PILED
IN CLEARING OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ MAY 2 3 2014 ★
BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------------- X

LEONID LAUTMAN,

                Plaintiff,

    -against-

2800 COYLE ST. OWNERS CORP.; SVETLANA
MARMER; VLADIMIR ROSENBLATT; ALLA
SHVARTS, *personally and as directors and officers of 2800
Coyle St. Owners Corp.*; DOM MANAGEMENT, LTD.;
STAN FISHMAN; IRENE FISHMAN, *personally and as
employees and principals of Dom Management, Ltd.*;
NORRIS MCLAUGHLIN & MARCUS, P.A.; DEAN M.
ROBERTS, ESQ.; and MIA D. FALLS, *in their
professional and personal capacities,*

                Defendants.

------------------------------------------------------------------- X

13-CV-967 (ARR)(VVP)

NOT FOR ELECTRONIC
OR PRINT PUBLICATION

OPINION & ORDER

ROSS, United States District Judge:

    Plaintiff Leonid Lautman, acting pro se, brings this action against his landlord

cooperative, its directors, its managing agent, the managing agent's principals, and the

cooperative's former lawyers for alleged violations of the Fair Debt Collection Practices Act

("FDCPA"), 15 U.S.C. § 1692 et seq., in connection with the defendants' allegedly unlawful

attempts to collect rent and related fees from plaintiff. Plaintiff also alleges several state law

claims. Defendants 2800 Coyle Street Owners Corp. (the "Co-op"), Svetlana Marmer, Vladimir

Rosenblatt, Alla Shvarts, DOM Management, Ltd., ("DOM"), Stan Fishman, and Irene Fishman

(collectively, the "Co-Op Defendants" ), now move for judgment on the pleadings dismissing the

complaint under Federal Rule of Civil Procedure ("FRCP") 12(c) or, in the alternative, summary

judgment under FRCP 56. Defendants Norris McLaughlin & Marcus, P.A. ("Norris

McLaughlin"), Dean M. Roberts, Esq., and Mia D. Falls, Esq. (collectively, the "Norris McLaughlin Defendants"), also move for dismissal under FRCP 12(c). For the reasons stated below, the Co-op Defendants' motion is granted in its entirety. The Norris McLaughlin Defendants' motion is granted in part and denied in part.

## BACKGROUND

For purposes of this opinion, the court relies on the factual allegations from the complaint and the documents referenced or incorporated therein.

Plaintiff resides in an apartment located at 2800 Coyle Street, Brooklyn, New York. Compl., DE #1, ¶ 4. The Co-op is a domestic cooperative housing corporation and owns the building at 2800 Coyle Street. Id. ¶¶ 4-5. Plaintiff holds shares of stock in the Co-op and leases his apartment from the Co-op subject to the terms and conditions of a proprietary lease. Id. ¶ 4. Defendants Svetlana Marmer, Vladimir Rosenblatt, and Alla Shvarts are also tenants at 288 Coyle Street and shareholders in the Co-op. Id. ¶¶ 6-8. Marmer serves as President of the Co-op's board of directors. Id. ¶ 6. In that role, she has "general management of the affairs of the [Co-op]." Id. (quoting Co-op Bylaws, Art. III). Rosenblatt also serves as a director for the Co-op and held the position of Vice-President during the relevant period. Id. ¶ 7. Shvarts currently acts as Vice-President of the Co-op's board. Id. ¶ 8.

Since August 1, 2011, DOM has acted as the managing agent for the Co-Op. Id. ¶ 10. Stan Fishman and Irene Fishman are the principals and senior managers of DOM. Id. ¶¶ 11-12. When DOM took over, the tenant-shareholders of the Co-op received a letter dated July 21, 2011, introducing DOM as the new managing agent. Id., Ex. F. One of DOM's regular

responsibilities as the managing agent for the Co-op is the collection of rent owed to the Co-op. Id. ¶ 10.

Between August 2011 when DOM took over as the Co-op's managing agent and January 2013, plaintiff received a number of rent bills from DOM on behalf of the Co-op. Specifically, he received eighteen rent bills showing rent and rent arrears owed by him, which amounts he alleges were "forfeited and unrecoverable" due to certain registration violations by the Co-op. Id. ¶ 33. Plaintiff also alleges that he received eight rent bills that failed to disclose that the Co-op and DOM had refused to process checks for rent remittances received from plaintiff. Id. ¶ 34. According to a letter that DOM sent to plaintiff on August 23, 2011, it appears that at least two checks from plaintiff were not processed because they contained the word "illegal" in the memo line. Id., Ex. G. Plaintiff also received nineteen rent bills listing "late charges and late charge arrears," id. ¶ 35, and fifteen rent bills attempting to collect interest from plaintiff at a rate that he alleges is unlawful, id. ¶ 36. Finally, plaintiff asserts that he received numerous rent bills in which the Co-Op Defendants and the DOM Defendants attempted to unlawfully collect legal costs and attorneys' fees incurred in connection with their attempts to collect the sums purportedly due from plaintiff. Id. ¶ 37. Plaintiff asserts that all of these rent bills contained false and misleading information and insists that these purported charges for rent, rent arrears, interest, and legal fees were unlawful.

On November 10, 2011, Rosenblatt sent plaintiff a letter on behalf of the Co-op's board of directors. Id., Ex. I. The letter set forth rent arrears owed by plaintiff and threatened to institute summary proceedings to terminate plaintiff's lease and evict him from the premises if he did not pay his arrears. According to plaintiff, the letter contained false and misleading statements. Id. ¶ 38.

3

In early 2012, the Co-op retained defendant Norris McLaughlin, a law firm, to represent it in connection with the Co-op's attempt to collect the rent arrears and fees that it claimed were owed by plaintiff. Defendant Dean M. Roberts, Esq., is a senior member and manager of Norris McLaughlin, and defendant Mia D. Falls, Esq., is an employee of the firm. Id. ¶¶ 15-16.

On January 19, 2012, the Co-op and Norris McLaughlin sent a "Ten Day Demand" letter to plaintiff. Id., Ex. J. In the letter, defendants set forth rent arrears owed by plaintiff and threatened to institute summary proceedings if plaintiff did not make payment or vacate the premises.

On February 15, 2012, the Co-op, through its attorneys at Norris McLaughlin, commenced summary nonpayment proceedings against plaintiff in Kings County Housing Court. Id. ¶¶ 18, 40 and Ex. K. Defendant Falls verified the nonpayment petition against plaintiff. Id. ¶ 8 and Ex. K. Plaintiff received the nonpayment petition on February 23, 2012. Id. ¶ 18. According to him, the rent arrears purported to be owed by him in the nonpayment petition had been "fabricated" by DOM and its principals. Id. In connection with this proceeding, on April 19, 2012, defendants provided plaintiff in court with a list, dated April 18, 2012, of his purported arrears owed. Id. ¶ 41 and Ex. L. In June 2012, plaintiff moved to dismiss the nonpayment proceeding. Id. ¶ 19. On July 27, the Co-op voluntarily dismissed the petition, and the action was discontinued without prejudice. Id. ¶ 20.

In approximately July 2012, the Co-op, Rosenblatt, and the DOM defendants posted a notice on the Co-op bulletin board listing all tenant-shareholders who were delinquent in their rent payments. Id. ¶ 42. The list included plaintiff's name and the alleged amount of his rent arrears. Id. Again, in approximately October 2012, the Co-op, Marmer and the DOM

4

defendants posted a list of delinquent tenant-shareholders that included plaintiff's name and the amount of his arrears. Id. ¶ 43.

In a demand letter dated December 1, 2012, and signed by Marmer and Shvartz, the Co-op demanded that plaintiff pay certain amounts owed and again threatened to institute legal action against plaintiff if he did not make payment within ten days of service of the letter. Id. ¶ 44 and Ex. O.

According to plaintiff, all of the above actions by the defendants involved false and misleading representations regarding the character and amount of rent and rent arrears owed by plaintiff. He alleges that the arrears, charges, and fees that the defendants attempted to collect from him were false and unlawful and that the Housing Court proceedings were instituted against him unlawfully. Plaintiff alleges that the defendants' actions violated numerous sections of the FDCPA. He further alleges state law claims for violation of the New York General Business Law section 349(a), malicious abuse of process, malicious prosecution, and libel.

## DISCUSSION

### I.    Standard of Review

Both sets of defendants have moved for dismissal under FRCP 12(c). In ruling on a motion for judgment on the pleadings under FRCP 12(c), a court should apply "the same standards that are employed for dismissing a complaint for failure to state a claim under Fed. R. Civ. P. 12(b)(6)." Ad-Hoc Comm. of Baruch Black & Hispanic Alumni Ass'n v. Bernard M. Baruch Coll., 835 F.2d 980, 982 (2d Cir. 1987); accord Hayden v. Paterson, 594 F.3d 150, 160 (2d Cir. 2010). To survive a motion to dismiss under FRCP 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly,

550 U.S. 544, 570 (2007). The court must accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. Id., 550 U.S. at 555-56; Freedom Holdings, Inc. v. Spitzer, 363 F.3d 149, 151 (2d Cir. 2004). Courts are "not bound to accept as true a legal conclusion couched as a factual allegation," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). However, it is well settled that pro se complaints are held to less stringent standards than pleadings drafted by attorneys, and the court is required to construe a plaintiff's pro se complaint liberally and to interpret it as raising the strongest arguments it suggests. Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam); Sealed Plaintiff v. Sealed Defendant #1, 537 F.3d 185, 191 (2d Cir. 2008). "Nonetheless, a pro se complaint must state a plausible claim for relief." Walker v. Schult, 717 F.3d 119, 124 (2d Cir. 2013).[1]

## II.    Plaintiff's FDCPA Claims against the Co-op Defendants

The Co-op Defendants jointly move to dismiss plaintiff's claims on a number of grounds. Their first contention is that they are improper defendants under the FDCPA because they are not "debt collectors" within the meaning of the statute. Because the court agrees, plaintiff's FDCPA claim against the Co-Op Defendants must be dismissed.

Plaintiff alleges that the defendants made "false and misleading representations" and "engaged in unfair and abusive practices" in violation of the FDCPA. Specifically, he alleges violations of 15 U.S.C. §§ 1692c(b), 1692d(3), 1692e(2)(A), 1692e(5), 1692e(7), 1692e(8), 1692e(10), and 1692f(1). Compl. ¶ 58. These provisions of FDCPA regulate the actions of a "debt collector." For purposes of the FDCPA, a "debt collector" is defined as:

---

[1] Because plaintiff's complaint is dismissed for failure to state a claim under FRCP 12(c), the court does not address the standard for decision on summary judgment under FRCP 56.

> [A]ny person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. . . .

15 U.S.C. § 1692a(6).

Generally, creditors are not subject to the FDCPA. Maguire v. Citicorp Retail Servs., Inc., 147 F.3d 232, 235 (2d Cir. 1998); 15 U.S.C. § 1692a(6). A "creditor" is "any person who offers or extends credit creating a debt or to whom a debt is owed." 15 U.S.C. § 1692a(4). Officers and employees of a creditor are also not subject to the FDCPA "while, in the name of the creditor, collecting debts for such creditor." Id. § 1692a(6)(A). A creditor will, however, be considered a debt collector subject to the FDCPA where the creditor "in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts." Id. § 1692a(6).

### The Co-Op and Individual Defendants Marmer, Rosenblatt, and Shvarts

In the FDCPA context, landlords are considered creditors whose conduct is not regulated by the statute. See Cousins v. Duane St. Assocs., 7 F. App'x 85 (2d Cir. 2001); Franceschi v. Mautner-Glick Corp., 22 F. Supp. 2d 250, 253 (S.D.N.Y. 1998). In light of the Co-op's landlord-tenant relationship with plaintiff, it will, therefore, be treated as a debt collector subject to the FDCPA only if it uses a name other than its own in connection with its attempts to collect payment from plaintiff such as would indicate that "a third person is collecting or attempting to collect such debts."[2] 15 U.S.C. § 1692a(6). In order for this false name exception to apply, three elements must be present: "(1) the creditor is collecting its own debts; (2) the creditor 'uses' a

---

[2] Even if a creditor employs a debt collector to recover its debts, it will not be held vicariously liable for the conduct of the debt collector. Williams v. Citibank, N.A., 565 F. Supp. 2d 523, 529 (S.D.N.Y. 2008).

name other than its own; and (3) the creditor's use of that name falsely indicates that a third person is 'collecting or attempting [to] collect' the debts that the creditor is collecting." Vincent v. The Money Store, 736 F.3d 88, 98 (2d Cir. 2013). The focus of the inquiry as to the second two elements is on whether the creditor has misrepresented who is collecting the debt and "whether the creditor has used a name to disguise to the consumer who is actually collecting the debt." Id. at 99-100 & n.9. In this case, plaintiff makes no allegations that the Co-op attempted to collect from him by using a false name or that it otherwise attempted to disguise who was collecting the debt. As alleged in the complaint, the Co-op attempted to collect the debt in its own name through its directors and its managing agent, DOM.[3] The complaint demonstrates that DOM openly acted as the Co-op's managing agent starting in August 2011 and that plaintiff was aware of the relationship between the Co-Op and DOM. See Franceschi, 22 F. Supp. 2d at 255 (false name exception is inapplicable where managing agent openly acted for landlord). Because the false name exception does not apply, the Co-op as a creditor is not subject to the FDCPA. Accordingly, plaintiff's FDCPA claim against the Co-Op must be dismissed.

As to the individual defendants Marmer, Rosenblatt, and Shvarts, their conduct described in the complaint is alleged to have occurred in their capacities as officers and directors of the Co-op. Because they acted "in the name of the creditor" and in their role as officers when they attempted to collect payment from plaintiff, they are also beyond the reach of the FDCPA, and the claims against them must be dismissed. 15 U.S.C. § 1692a(6)(A).

---

[3] It also later attempted to collect from plaintiff through a lawsuit filed by its attorneys, Norris McLaughlin, but that lawsuit was filed in the Co-op's name on its behalf.

*DOM and the Individual Defendants Stan and Ilene Fishman*

A person will not be subject to the FDCPA provisions regulating debt collectors if "collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity . . . concerns a debt which was not in default at the time it was obtained by such person." Id. § 1692a(6)(F)(iii). This court is aware of at least one other court in this circuit which has held this exception applicable to a managing agent that "obtained" the right to collect rent on behalf of a landlord prior to the tenant allegedly going into default on the rent payments. See Franceschi, 22 F. Supp. 2d at 253-54. Under the lease between plaintiff and the Co-op, plaintiff is required to pay rent (or "maintenance") and late charges, if any, to the Co-op. Compl., Ex. B. DOM entered into an arrangement with the Co-op under which it served as the property manager for the Co-op with DOM's responsibilities beginning August 1, 2011, including its collection of rent owed to the Co-op. The alleged non-payment of rent and rent arrears giving rise to the conduct underlying plaintiff's FDCPA claims arose only after DOM entered into the agreement with the Co-op that gave it the responsibility to collect rent from plaintiff. This court finds persuasive the Franceschi court's understanding of the word "obtain" in section 1692a(F)(iii) to "include the possession of the right and responsibility to collect a debt." Franceschi, 22 F. Supp. 2d at 254; cf. Wood v. Capital One Servs., LLC, No. 5:09-CV-1445 (NPM/DEP), 2012 WL 4364494, at *7 (N.D.N.Y. Sept. 21, 2012) (finding mortgage servicer exempt because § 1692a(6)(F)(iii) applies "not only to those who have purchased a debt prior to default, but also to those who had responsibility prior to default for collecting the debt owed to another") (citing Franceschi, 22 F. Supp. 2d at 254); Perry v. Stewart Title Co., 756 F.2d 1197, 1208 (5th Cir. 1985) (finding mortgage servicer not a debt collector). But see Travieso v. Gutman, Mintz, Baker & Sonnenfeldt, P.C., No. 94 CV 5756 (JBW), 1995 WL 704778, at *4

9

(E.D.N.Y. Nov. 16, 1995) (finding a real estate company acting as managing agent non-exempt from FDCPA without considering whether § 1692a(6)(F)(iii) would apply). This reasoning also accords with the purpose of the FDCPA, which was not "to cover companies in the business of regularly servicing outstanding debts, such as rents, for others," because Congress recognized that the incentives of debt servicers were more closely aligned with those of creditors than with those of debt collectors. Franceschi, 22 F. Supp. 2d at 254-55 (citing Congressional legislative history for FDCPA). Following the reasoning in Franceschi, the court finds that DOM falls with the exception of section 1692a(F)(iii) and is beyond the reach of plaintiff's FDCPA claims. The FDCPA claims against DOM must, therefore, be dismissed, as well as the claims against Stan and Ilene Fishman, who are alleged to have acted in their capacities as employees and principals of DOM.

### III. Plaintiff's FDCPA Claims against the Norris McLaughlin Defendants

The Norris McLaughlin Defendants move to dismiss plaintiff's FDCPA claims against them on the grounds that plaintiff's claims are barred by the applicable statute of limitations. FDCPA claims must be brought "within one year from the date on which the violation occurs." 15 U.S.C. § 1692k(d). The Norris McLaughlin Defendants argue that the most recent date on which a violation is alleged to have occurred is February 15, 2012, the date on which Norris McLaughlin attorneys filed summary proceedings on behalf of the Cp-op against plaintiff in Housing Court. They argue the statute of limitations for any FDCPA claim related to the Housing Court suit began to run on the date that the Housing Court action was filed, and not on the later date when plaintiff was served, which was February 23, 2012. Accordingly, they contend that this suit, which was commenced on February 22, 2013, was outside the one-year statute of limitations.

Notably, if the statute of limitations did not begin to run until plaintiff was served with the complaint in the Housing Court action, then his instant FDCPA claim would not be time-barred. Thus, the court must determine whether, where a plaintiff's FDCPA claim is based on the defendant's bringing underlying proceedings against the plaintiff, the one-year statute of limitations begins to run at the time of filing or at the time of service.

The Norris McLaughlin Defendants ask the court to rely on an unreported case from the Southern District of New York for the proposition that the statute of limitations runs from the time of filing. In Calka v. Kucker, Kraus & Bruh, LLP, No. 98 Civ. 0990(RWS), 1998 WL 437151 (S.D.N.Y. Aug. 3, 1998), the court held that a plaintiff's FDCPA suit was time-barred because it was filed over a year and a half after the underlying lawsuit had been filed against her. According to the court, "the latest date a[n] [FDCPA] violation could have accrued, if any, was when the lawsuit was initially filed," and the defendant's ongoing conduct in prosecuting the suit did not, as the plaintiff had argued, amount to a "continuing violation." Id. at *3. However, the court in Calka did not squarely face the question presented here---that is, whether the statute of limitations runs from filing or from service. Instead, the Calka court dealt only with whether ongoing violations continued to accrue when the defendants made further filings after initiation of the suit. Although the date of service is not mentioned in the Calka opinion, the FDCPA suit was not brought until over a year and a half after filing of the underlying lawsuit, and therefore it is unlikely that dating accrual to filing versus service would have made a difference to the outcome. Thus, the conclusion in Calka is not particularly persuasive here because the court did not weigh the relevant issue. Naas v. Stolman, 130 F.3d 892 (9th Cir. 1997), also relied on by the Norris McLaughlin defendants, equally fails to resolve the issue because, in that case too, the court did not face a choice between accrual upon filing and accrual upon service. In that case,

the Ninth Circuit rejected the argument that accrual did not occur until the judgment was upheld by the court of appeals.

By contrast, the overwhelming majority of cases that have directly addressed the precise question faced here have determined that the statute of limitations for an FDCPA claim arising from a collection suit brought against a plaintiff begins to run when the plaintiff is served with the summons and complaint. The most cited of these is <u>Johnson v. Riddle</u>, 305 F.3d 1107 (10th Cir. 2002). In <u>Johnson</u>, the Tenth Circuit Court of Appeals adopted the view that the plaintiff did not have a "complete and present cause of action" until service occurred. <u>Id.</u> at 1113. It concluded that, in the event a debt collector abandons a debt collection suit before the plaintiff had been served, this would not constitute an "attempt to collect" from the plaintiff, and therefore would not constitute a "violation" within the meaning of 15 U.S.C. § 1692k(d). <u>Id.</u> at 1113-14. In reaching the conclusion that the limitations period should start to run only once a plaintiff is served, the Tenth Circuit expressed particular concern that, if the clock began to run from filing, a debt collector could effectively block any action under the FDCPA by filing suit and then delaying service. <u>Id.</u> at 1114. The Tenth Circuit also noted that the date of service is easily ascertainable and that "the decision whether to serve the debtor" is the "last opportunity to comply with the FDCPA." <u>Id.</u> at 1114 n.4. In finding these considerations relevant, the Tenth Circuit looked to the FDCPA cases holding that the limitations clock for a demand letter begins to run from the date of mailing because that date is easily determined and ascertainable and serves as the debt collector's last opportunity to comply with the statute. <u>Id.</u>

Myriad courts have adopted the rationale from <u>Johnson</u>. See <u>Archer v. Aldridge Connors, LLP</u>, Case No. 13-81340-CIV, 2014 WL 721486, at *3 (S.D. Fla. Feb. 26, 2014); <u>Polinsky v. Cmty. Health Partners Reg'l Health Sys.</u>, 858 F. Supp. 2d 891, 896-97 (N.D. Ohio

2012); Perez v. Bureaus Inv. Grp. No. II, LLC, No. 1:09-CV-20784, 2009 WL 1973476, at *2 (S.D. Fla. July 8, 2009); Anderson v. Gamache & Myers, P.C., No. 4:07CV336MLM, 2007 WL 1577610, at *8 (E.D. Mo. May 31, 2007); cf. Wyles v. Excalibur I, LLC, No. Civ. 05-2798JRTJJG, 2006 WL 2583200, at *3 (D. Minn. Sept. 7, 2006) (relying on Johnson and finding limitations clock ran from service where debtor had argued that it ran from date of default judgment entered against her). But see Cooper v. F.A. Mgmt. Solutions, Inc., No. 8:06-CV-751-T-27MAP, 2007 WL 4326800, at*4 (M.D. Fla. Dec. 7, 2007) (finding limitations clock runs from filing, not service). In doing so, courts have concluded that the Johnson approach best "comports with the simple principle that due process requires notice." Langendorfer v. Kaufman, No. 1:10-CV-00797, 2011 WL 3682775, at *3 (S.D. Ohio Aug. 23, 2011); see also Serna v. Law Office of Joseph Onwuteaka, P.C., 732 F.3d 440, 443-46 (5th Cir. 2013) (holding that, in light of Congress's purpose in enacting FDCPA, violation of section 1692i(a)(2) triggering limitations clock does not occur until debtor receives notice of a debt collection suit). These courts prefer the date of service over the date of filing from a "practical and fairness-oriented standpoint" because the statute of limitations should "not begin to run until the plaintiff knew or should have known of the defendant's violation of the Act." Andrade v. Erin Capital Mgmt. LLC, No. 09-21186-CIV, 2010 WL 1961843, at *1 (S.D. Fla. May 17, 2010) ("[U]nless a statute says otherwise, federal courts will not imply a rule under which the statute of limitations runs even if the prospective plaintiff has no reason to know that he might have a claim against another party.").

This court finds Johnson persuasive and agrees that the interests of fairness are better served by the conclusion that the statute of limitations begins to run from the date of service.[4]

---

[4] The court finds unconvincing the argument that this court should reject the Johnson holding in reliance on the

13

This approach also accords with the approach generally adopted for harassing collection letters following the decision in <u>Mattson v. U.S. W. Commc'ns, Inc.</u>, 967 F.2d 259 (8th Cir. 1992). Under the <u>Mattson</u> line of cases, the statute of limitations for FDCPA suits based on harassing collection letters is triggered on the date the debt collector mails the letter. Mailing, like an attempt at service, corresponds with the provision of notice to a potential plaintiff of the facts underlying their FDCPA claim.[5]

Accordingly, the statute of limitations for plaintiff's claim based on the commencement of summary nonpayment proceedings in Housing Court did not begin to run until he was served in that action, and his filing in the instant suit was timely. The Norris McLaughlin Defendants' motion to dismiss plaintiff's FDCPA claim against them arising out of their commencement of summary nonpayment proceedings is, therefore, denied. However, to the extent plaintiff seeks to make out an FDCPA claim against the Norris McLaughlin Defendants related to any conduct by those defendants prior to the date of service of the lawsuit, those claims must be dismissed as untimely under the statute.

---

Sixth Circuit's logic in <u>Tyler v. DH Capital Mgmt., Inc.</u>, 736 F.3d 455 (6th Cir. 2013). In <u>Tyler</u>, the Sixth Circuit rejected the <u>Johnson</u> court's conclusion that an FDCPA violation could not be complete upon filing alone and, instead, held that filing a debt collection lawsuit could, in and of itself, constitute an FDCPA violation even if the debtor has not yet been served with process. <u>Id.</u> at 463. In <u>Tyler</u>, however, the court was not dealing with a statute of limitations issue but, rather, with the question of whether a debtor's FDCPA claim had accrued prior to his filing for bankruptcy such that the claim would constitute property of the bankruptcy estate under bankruptcy law. <u>Id.</u> at 461. This court takes seriously the concern raised in <u>Tyler</u> that the filing of a complaint may itself cause harm to a debtor. <u>Id.</u> at 464. Nonetheless, the court finds the <u>Johnson</u> approach more persuasive because it better accords with the interests of fairness and the aim of the FDCPA to protect consumers, which was also the concern driving the decision in <u>Tyler</u>.

[5] The court disagrees with <u>Tyler</u>, which analogizes filing a suit to mailing a letter. 736 F.3d at 464. Unlike with the mailing of a letter, filing a suit does not constitute an action which should result in a plaintiff receiving notice of the facts underlying their potential claim.

## III.   Plaintiff's State Law Claims

### A.   *New York General Business Law Section 349*

In addition to his FDCPA claims, plaintiff brings a number of claims under state law.  In the first of his state law causes of action, plaintiff alleges that all defendants engaged in deceptive business acts or practices in violation of New York General Business Law section 349.  Section 349 makes it unlawful to engage in "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service."  N.Y. Gen. Bus. Law § 349(a).  An individual "who has been injured by" such deceptive acts or practices has a private right of action to recover the greater of his actual damages or fifty dollars.  Id. § 349(h).  A private action under section 349 requires a showing (1) that the defendant's conduct or practice was misleading in a material respect, (2) that it was consumer-oriented, and (3) that the plaintiff was injured thereby.  E.g., Maurizio v. Goldsmith, 230 F.3d 518, 521 (2d Cir. 2000); Gristede's Foods, Inc. v. Unkechauge Nation, 532 F. Supp. 2d 439, 450 (E.D.N.Y. 2007).

"Private transactions not of a recurring nature or without ramifications for the general public do not fall within the purview of section 349."  Gottlieb Dev. LLC v. Paramount Pictures Corp., 590 F. Supp. 2d 625, 636 (S.D.N.Y. 2008).  "The typical violation contemplated by the statute involves an individual consumer who falls victim to misrepresentations made by a seller of consumer goods usually by way of false and misleading advertising."  Id. (internal quotation marks and citation omitted).  "Whether a plaintiff can bring a section 349 claim will depend on 'whether the matter affects the public interest in New York.'"  Id. (quoting Securitron Magnalock Corp. v. Schnabolk, 65 F.3d 256, 264 (2d Cir. 1995)).  The "gravamen of the complaint" must be harm to the public interest.  Securitron Magnalock Corp., 65 F.3d at 264.

To the extent that plaintiff alleges that defendants violated section 349 in connection with their initiation of the Housing Court proceedings that underlie the remaining FDCPA claims against the Norris McLaughlin Defendants, his claim must be dismissed with prejudice for failure to state a claim. Although some courts have applied section 349 in the landlord/tenant context, e.g., Sorrentino v. ASN Roosevelt Ctr. LLC, 579 F. Supp. 2d 387, 391 (E.D.N.Y. 2008) (marketing, advertising and renting apartments while failing to disclose water infiltration and mold problems); Frazier v. Priest, 534 N.Y.S.2d 846 (City Ct. 1988), the allegations regarding the Housing Court proceedings do not involve the deceptive consumer-oriented type of conduct targeted by the statute. "[A] Section 349 violation requires a defendant to mislead the plaintiff in some material way." Mascoll v. Strumpf, No. 05-CV-667 (SLT), 2006 WL 2795175, at *9 (E.D.N.Y. Sept. 26, 2006) (quoting Conboy v. AT&T Corp., 241 F.3d 242, 258 (2d Cir. 2001)). Here, plaintiff does not assert that he himself was in any way misled by the allegedly false rent arrears and other charges claimed by defendants in the Housing Court proceedings. To the extent his argument is that defendants misled the Housing Court, that argument must fail because it does not show consumer-oriented deception. See id.; Caldwell v. Gutman, Mintz, Baker & Sonnenfeldt, P.C., 701 F. Supp. 2d 340, 355 (E.D.N.Y. 2010) (adopting Magistrate Judge's conclusion in report and recommendation that defendants' allegedly false misrepresentations made during civil court litigation not sufficient to state a claim under section 349). Accordingly, plaintiff's section 349 claim with respect to the defendants' conduct in connection with the Housing Court proceeding must be dismissed with prejudice.

To the extent plaintiff also alleges violations of section 349 in connection with defendants' conduct other than in bringing the Housing Court proceedings, the court declines to exercise supplemental jurisdiction over those claims, and plaintiff's claims are dismissed without

prejudice. Although these claims arguably have some logical relation to the remaining FDCPA claims against the Norris McLaughlin Defendants arising out of the Housing Court proceedings because they may involve similar evidence as to the validity of the rent arrears and other charges that defendants sought to recover from plaintiff, this court may decline to exercise supplemental jurisdiction over those claims. The court is empowered to exercise supplemental jurisdiction over state law claims "that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution," 28 U.S.C. § 1367(a), but the exercise of such supplemental jurisdiction is discretionary, and the court may decline to hear a state law claim where there are "compelling reasons" to do so,  28 U.S.C. § 1367(c); see also Ruhrgas AG v. Marathon Oil Co., 526 U.S. 574, 585 (1999) ("[D]istrict courts do not overstep Article III limits when they decline jurisdiction of state-law claims on discretionary grounds without determining whether those claims fall within their pendent jurisdiction . . . .") (citation omitted).  In this case, plaintiff's other section 349 claims would "substantially predominate" over the remaining FDCPA claim against the Norris McLaughlin Defendants.  28 U.S.C. § 1367(c)(2).  The remaining FDCPA claim involves one narrow question regarding whether a single defendant violated federal law in connection with one Housing Court proceeding.  An evaluation of plaintiff's section 349 claims would require the court to examine the conduct of the defendants against whom the federal claims have been dismissed spanning a substantially longer period of time and involving numerous rent bills and letters sent by those defendants as well as their alleged actions subsequent to the voluntary dismissal of the relevant Housing Court proceeding.  What is more, plaintiff's section 349 claim raises novel issues in an undeveloped area of law regarding whether New York's consumer protection statute would apply in this sort of landlord-tenant rent dispute.  See 28 U.S.C. §

1367(c)(1). Accordingly, plaintiff's section 349 claims related to defendants' conduct other than bringing the summary nonpayment proceeding is dismissed without prejudice. Plaintiff may pursue these claims in state court.

### B.     *Malicious Abuse of Process*

Plaintiff's second state-law claim is one for malicious abuse of process against the Co-op, Marmer, and the Norris McLaughlin Defendants related to their filing of the summary nonpayment proceedings against plaintiff in Housing Court. Under applicable New York law, a plaintiff claiming malicious abuse of process must show that a defendant "(1) employ[ed] regularly issued legal process to compel performance or forbearance of some act (2) with intent to do harm without excuse or justification, and (3) in order to obtain a collateral objective that is outside the legitimate ends of the process." Cook v. Sheldon, 41 F.3d 73, 80 (2d Cir. 1994). "[T]he requirement of a collateral objective is not met merely by showing a malicious motive; there must be an improper purpose for the use of process, i.e. something other than the purpose for which the law created it." De Santis v. City of N.Y., No. 10 Civ. 3508(NRB), 2011 WL 4005331, at *8 (S.D.N.Y. Aug. 29, 2011); see also Savino v. City of N.Y., 331 F.3d 63, 77 (2d Cir. 2003). Here, plaintiff's complaint fails to allege any improper purpose for the initiation of the summary nonpayment proceedings against him. Defendants initiated the summary nonpayment proceedings for the purposes of claiming rent arrears and having plaintiff removed for failure to pay rent, which is precisely the purpose for which such proceedings were created. This is not the kind of "collateral objective outside the legitimate ends of the process" that gives rise to a malicious abuse of process claim, and accordingly this claim against all defendants is dismissed.

18

## C.  *Malicious Prosecution*

Plaintiff's third state-law cause of action for malicious prosecution is against the same defendants---the Co-op, Marmer, and the Norris McLaughlin Defendants---and, like his malicious abuse of process claim, fails for failure to state a claim.  To succeed on a malicious prosecution claim under New York law, a plaintiff must show (1) the initiation of a lawsuit against him by the defendants (2) with actual malice as a motivating factor (3) without probable cause to believe the suit can succeed (4) that terminates in the plaintiff's favor (i.e., that ends in failure for defendants).  Engel v. CBS, Inc., 145 F.3d 499, 502 (2d Cir. 1998).  Where the plaintiff complains of a civil action against him, he must "prove special injury---some interference with [his] person or property beyond the ordinary burden of defending a lawsuit." Id. (internal quotation marks omitted).  Here, plaintiff has not shown that the Housing Court proceeding terminated favorably to him because the defendants voluntarily discontinued the action.  See Sokol v. Sofokles, 523 N.Y.S.2d 155, 157 (App. Div. 1988) (in civil action, dismissal without prejudice for failure to prosecute not a favorable determination on the merits); cf. O'Brien v. Alexander, 898 F. Supp. 162, 167 (S.D.N.Y. 1995) (collecting New York cases for proposition that, in criminal context, dismissal without prejudice does not constitute a favorable termination).  The fact that the voluntary dismissal was not favorable is further demonstrated by the fact that the Co-op did not simply discontinue the Housing Court proceedings but later reinitiated a new summary nonpayment proceeding in which it succeeded in obtaining a default judgment against plaintiff.  Accordingly, plaintiff's malicious prosecution claim is also dismissed.

### D. *Libel*

Plaintiff's final state-law cause of action asserts a claim for libel against the Co-op, Marmer, Rosenblatt, and the DOM Defendants arising out of those defendants' alleged publication to other tenant-shareholders of the Co-op of statements regarding false rent arrears owed by plaintiff. As discussed above, the court may decline to exercise supplemental jurisdiction over a state-law claim where there are compelling reasons to do so. Here, the only remaining parties defending against plaintiff's federal claim are the Norris McLaughlin Defendants, who are not even named in plaintiff's libel action. Moreover, other than evaluating the propriety of the rent arrears claimed by the Co-op, deciding plaintiff's libel claim would require the court to evaluate substantially different requisite elements and materially distinct actions from those involved in plaintiff's remaining FDCPA claim against the Norris McLaughlin Defendants. For these reasons, the court declines to exercise supplemental jurisdiction over plaintiff's libel claim, and this claim is also dismissed without prejudice to be pursued by plaintiff in the state courts if he so desires.

## CONCLUSION

For the foregoing reasons, the Co-op Defendants' motion is granted in its entirety, and the Co-Op Defendants are dismissed from the case. The FDCPA, malicious abuse of process, and malicious prosecution claims against the Co-op Defendants are dismissed with prejudice. To the extent plaintiff's New York General Business Law section 349 claim relates to the initiating of the Housing Court proceedings against him, it is also dismissed with prejudice. As to his section 349 claims against the Co-Op Defendants arising out of any other conduct, those claims

are dismissed without prejudice. The libel claim against the Co-op Defendants is also dismissed without prejudice.

With regard to the motion of the Norris McLaughlin Defendants, it is granted in part and denied in part. All state-law claims against the Norris McLaughlin Defendants are dismissed with prejudice. However, the FDCPA claim against the Norris McLaughlin Defendants shall proceed.

SO ORDERED.

/S/ Judge Allyne R. Ross

Allyne R. Ross
United States District Judge

Dated:      May 23, 2014
            Brooklyn, New York

**SERVICE LIST**

**Leonid Lautman**
2800 Coyle Street, Apt.# 322
Brooklyn, NY 11235